[S. F. No. 8242. Department Two.—December 12, 1917.]

In the Matter of the Estate of CHARLES N. FELTON, Deceased. CHARLES N. FELTON, Jr., Appellant; JOHN S. CHAMBERS, Controller, etc., Respondent.

APPEAL — RECORD ON APPEAL — FINDINGS — OPINION OF TRIAL JUDGE.— Opinions of trial judges are welcomed by the supreme court as aids to the justices in discovering the processes by which the judgment has been reached, but such opinions are not part of the findings, and cannot be considered on appeal in determining whether the findings have legal support in the evidence.

TAXATION—INHERITANCE TAX—GIFT TO TAKE EFFECT AFTER DONOR'S DEATH—CORPORATION STOCK—APPRAISEMENT FOR PURPOSE OF TAXATION.—Where a gift is made of stock in a corporation to take effect in possession after the death of the donor, an appraisal of the

market value of the stock at the date of the donor's death is the proper basis for the fixing of the tax.

ID.—CORPORATION STOCK—MARKET VALUE, HOW APPRAISED.—The proper way to establish the market value, for the purpose of inheritance taxation, of shares of stock in a close family corporation, which have never been on the market and have never been sold privately, is to ascertain the value of the property represented ,by the corporation stock, and assign to each share its proportionate worth.

ID.—TRANSFER IN CONTEMPLATION OF DEATH—"VALUABLE CONSIDERATION"—INADEQUATE CONSIDERATION.—Where a son was equitably entitled to certain shares of the stock of a family corporation, forming part of a larger number which originally stood in the name of his father and were transferred by the father to the son, the allowance, on the part of the son, to his father of the dividends on the shares which were equitably the son's even though a "valuable" consideration, was not an "adequate" consideration for the transfer within the meaning of the Inheritance Tax Act of 1905.

ID.—FINDINGS BY INHERITANCE TAX APPRAISER—FAILURE TO FIND CURED BY FINDING OF COURT.—Conceding that the inheritance tax appraiser, who made a report and declared the amount of inheritance tax due on certain corporation stock, because of its transfer during the life of a decedent, as a gift intended to take effect in possession and enjoyment after the donor's death, erred in failing to make a finding that there was an absence of valuable and adequate consideration, the error, if any, was cured when the superior court, trying the matter *de novo*, made a formal finding "that said transfer was made without valuable or adequate consideration."

ID.—TRANSFER IN CONTEMPLATION OF DEATH—AMENDED STATUTE—RATE OF TAX—DATE OF TRANSFER.—Where, subsequent to the date of a gift in contemplation of death, and before the death of the donor, a statute imposing an inheritance tax is amended so as to increase the rate of taxes payable, the amount of the tax must be assessed according to the statute in force at the time the stock was transferred, and not according to the rate fixed by the later statute.

ID.—PROPERTY INHERITED AND PROPERTY RECEIVED BY GIFT—TAX, HOW COMPUTED.—Where the inheritance tax on money received by a son by inheritance from his father had been computed by inheritance tax appraisers at the rate fixed by a statute of 1913, in force at the time of the death of the father, and no appeal had been taken from that part of a judgment of the superior court, which confirmed and approved said tax, and the tax had been paid, but the supreme court, on appeal from a part of the same judgment, which approved an inheritance tax on certain stock transferred to the son by the decedent as a gift in his lifetime, decided that the latter tax should be computed at a lower rate fixed by a statute of 1905, which was in force at the time of the gift, the tax is not to be computed upon the amount of the stock plus the amount received by way of inheritance, but the gift must be treated as a separate entity.

APPEAL from part of a judgment of the Superior Court of San Mateo County. Geo. H. Buck, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, for Appellants.

Robert A. Waring, and John C. Altman, for Respondent.

MELVIN, J.—Charles N. Felton, Jr., appeals from a part of a judgment and decree confirming the report of the inheritance tax appraiser whereby the sum of $35,352.82 was declared to be the amount of inheritance tax due upon 728 shares of the capital stock of the Felton Company (a corporation), standing in the name of appellant but held to be assessable for inheritance tax as a part of the estate of Charles N. Felton, deceased, because of its transfer to appellant during the life of Charles N. Felton as a gift intended to take effect in possession and enjoyment after the donor's death.

The Felton Company was a family corporation having a capital of two hundred thousand dollars, divided into two thousand shares of the par value of one hundred dollars each. It was incorporated under the laws of this state in 1905. Upon the organization of the corporation Charles N. Felton, Sr., took one-half of the capital stock and assigned to each of his two children (the appellant being one of them) one-fourth thereof. There was evidence tending to show that this division of the stock did not accurately represent the relative contributions of the stockholders to the assets of the corporation, but each of the three members of the family had furnished about one-third of the property. However, the children were entirely satisfied with the father's dominance in the corporation, and during his lifetime he received all of the dividends on one-half of the stock. On April 21, 1911, a certificate was issued signed by Charles N. Felton as president and P. H. McGrath as secretary of the corporation, to the effect that Charles N. Felton, Jr., was entitled to 990 shares of the stock. It was in evidence that this certificate was promptly delivered to Charles N. Felton, Jr. Charles N. Felton, Sr., died on or about September 13, 1914.

A tabulated statement indicating appellant's estimate of the amounts of assets which had been contributed respectively by the father and the two children upon the formation of the corporation was submitted to the inheritance tax appraiser, and using that statement he found that upon the bases of their respective contributions the father was equitably entitled to 728 shares and the children to 636 shares each. Therefore, instead of assessing all of the stock which he regarded as a gift to be possessed and enjoyed after the father's death, he assessed only that part which he regarded as equitably the portion of Charles N. Felton, Sr., in the original allotment of stock.

Appellant contends first, that if the stock were liable for inheritance tax, the amount assessed was excessive and based upon a wrong theory of the law, and, second, that no inheritance taxes could be lawfully charged against it.

The list of properties of the corporation furnished by Mr. Charles N. Felton, Jr., and Mr. McGrath showed, in addition to the estimated values of the assets contributed at the time of the organization of the company, the values placed by those gentlemen upon the possessions of the Felton Company on December 31, 1914, more than three months after Senator Felton's death. Appellant insists that the court erred first in accepting these arbitrary sums given by him and by Mr. McGrath (being merely their estimates of the value of the various items of property) as the sole bases of the worth of the assets, and, secondly, in fixing the "market value" of the shares of stock (which is the statutory measure for taxing purposes) by dividing the aggregate value of the entire assets of the Felton Company by the number of shares of stock issued. In support of this contention he calls our attention to the following language contained in the opinion of the learned judge of the superior court who tried the case:

"The question as to the overvaluation of this stock by the inheritance tax appraiser is presented with counsel's usual force. This is a peculiar case and presents some peculiar features. While it is true that through their attorney these two heirs have raised this question of the value placed upon this stock by the inheritance tax appraiser, yet these two heirs— the only parties interested in the valuation—have not given any testimony questioning the value placed upon these shares of stock by the inheritance tax appraiser, notwithstanding the

fact that both of them were witnesses to the matter. While it is true outside parties having but little idea and only a general knowledge of the value of the property represented by these shares of stock—were placed upon the stand in behalf of the two heirs but the heirs remained silent. A list of the cost and value of these properties represented by these shares of stock was handed to the inheritance tax appraiser by Mr. Felton, Jr., the manager of this estate.

''I assume that the inheritance tax appraiser performed his duty and found that this list thus presented represented the market value of this stock and the evidence upon this point seems to confirm the view taken by the inheritance tax appraiser upon this matter.'' We cannot accept appellant's view that the court acted solely upon his and Mr. McGrath's estimates of value. Indeed, the last sentence quoted above seems to contradict that assumption. But even if the written opinion did show, as appellant insists that it does, a sole reliance upon that schedule, nevertheless we would be bound to examine the record to ascertain whether or not there could be found therein testimony of expert witnesses tending to support the findings. Opinions of judges of trial courts are always welcomed by this court because, as a rule, they aid the justices in discovering the processes by which the judgments have been reached. But such opinions are not part of the findings. We may only consider whether the findings have sufficient legal support in the evidence. (*Goldner* v. *Spencer*, 163 Cal. 317, [125 Pac. 347].)

Surely the schedule prepared under appellant's own direction had some evidentiary force as an admission of the value of the property at a time near the date of Senator Felton's death. But aside from this there was expert testimony regarding the market value of the various items of property. Some of the estimates given by the experts exceeded and some corresponded with the values as given by appellant and Mr. McGrath. We find, therefore, that the court's conclusion regarding the correctness of the appraiser's finding of value of the assets is supported by substantial evidence.

Respondent does not question the rule that the market value of stock at the date of the death of the appellant's father is the proper basis for the fixing of the tax, nor that generally such market value is quite distinct from the ratio between the number of shares assessed and the value of the

corporation's property. The term "market value" has been fully defined by this court. (*Sacramento Southern R. R. Co.* v. *Heilbron*, 156 Cal. 408, [104 Pac. 979]; *Estate of Ross*, 171 Cal. 64, [151 Pac. 1138]; *Bullard* v. *Stone*, 67 Cal. 477, [8 Pac. 17].) Respondent also admits that the same rule for determining market values as that employed in other cases is applicable, generally speaking, to those in which the amounts of inheritance taxes are involved. (*Estate of Ross*, 171 Cal. 64, [151 Pac. 1138].) But the Felton Company is a close family corporation. Its shares of stock have never been upon the market and they have never been sold privately. According to the views of respondent the only way to establish the market value of such shares of stock is to ascertain the value of the property which they represent, assigning to each share its proportionate worth. This is the method of determining market value which has been adopted in New York and approved by the courts. (*In re Jones*, 172 N. Y. 575, [60 L. R. A. 476, 65 N. E. 570]; *In re Crawford*, 85 Misc. Rep. 283, [147 N. Y. Supp. 234]; *In re Valentine*, 147 N. Y. Supp. 231.) We are in accord with respondent's theory that under the circumstances of this case the method of reaching the value of the shares of stock which was adopted was the proper one.

There is no force in appellant's contention that the stock is of less value because we are here concerned with a minority interest. Appellant owns a majority of the stock, the other shares belonging to his sister. While the particular stock subject to the tax is less than half of the issue, appellant, as its possessor, is not under the disadvantages that sometimes confront holders of minority interests.

Appellant says that there was a "valuable and adequate consideration" for the transfer to him of the shares of stock— that the obligation on his part to allow to his father the dividends upon the shares which were equitably his but were issued to, Charles N. Felton, Sr., as part of the one thousand shares taken by that gentleman originally, would have been consideration for the transfer of the 728 shares. Granting that this might be a *valuable* consideration, it would not be an *adequate* consideration. (*Estate of Reynolds*, 169 Cal. 600, [147 Pac. 268].) But the complete answer to appellant's contention is that he testified to the fact that the stock was received as a gift from his father and that merely a nominal consideration was paid. But it is argued that the

appraiser failed to make a finding that there was an absence of valuable and adequate consideration. Upon this failure appellant predicates an assertion that serious error was committed. (Citing *McDougald* v. *Boyd*, 172 Cal. 753, [159 Pac. 168].) Conceding the duty of the appraiser to make such finding, 'it is true that the court, trying the matter *de novo* upon the transcript of testimony taken before the appraisers (which was introduced upon stipulation of counsel) and upon other testimony, made a formal finding "That said transfer was made without valuable or adequate consideration."

The most important question relates to the rate of taxation applicable to the transfer of stock from Senator Felton to his son. It is here contended, under the authority of *Hunt* v. *Wicht*, 174 Cal. 205, [L. R. A. 1917C, 961, 162 Pac. 639], that the rates applicable to the transfer in question should be those in force at the date of the transfer and not those in effect at the time of Senator Felton's death. But it is suggested that the question here presented is somewhat different from that which was raised and answered in *Hunt* v. *Wicht*. It was held by this court in that case that where a gift of property is irrevocably made with the reservation of a life estate in the donor, there being no inheritance tax upon such a gift at the time of the transfer, the property so vested may not be reached by a statute subsequently passed, imposing a tax upon such transfers. Our attention is called to the fact that there was a statute imposing an inheritance tax upon such a gift as this when it was made and that the subsequent statute, which was retroactive by its terms, merely increased the rates. But we can see no escape from the conclusion, under the reasoning of the case of *Hunt* v. *Wicht, supra,* that an effective gift such as this may not be subject to taxation under the schedule provided by a statute subsequently passed. It was error, therefore, to assess the amount of the inheritance tax according to the statute of 1913 instead of that of 1905, in force at the time when the stock was transferred.

That the donor of the stock retained the enjoyment of the income from the transferred property during his life was a fact proven to the satisfaction of the court by ample testimony. It was plain that neither he nor his son intended that the gift should take effect in enjoyment during the former's life, and this conclusion is supported even if we ignore an indorsement in writing on the certificate which seemed to re-

serve the dividends to C. N. Felton during his life. This purported assignment was followed by the word "approved" and the signatures of both of the Feltons. Appellant insists that these signatures were not put upon the certificate at the time the writing was made nor for the purpose of indicating assent to the purported reservation, but we need not consider this question, because even accepting the views of appellant regarding the indorsement, there was ample support for the finding that the gift was made with intent that enjoyment should be postponed until after the death of the donor; that it was made without valuable and adequate consideration, and that the stock was given in contemplation of the death of appellant's father. These conclusions are supported by the evidence under the principles declared in such cases as *Estate of Reynolds*, 169 Cal. 600, [147 Pac. 268], and *Abstract and Title Guaranty Co.* v. *State*, 173 Cal. 691, [161 Pac. 264].

No other alleged errors require discussion or analysis.

That part of the judgment from which an appeal is taken is reversed.

Henshaw, J., and Lorigan, J., concurred.

On December 22, 1917, the following supplementary opinion was filed herein:

MELVIN, J.—Since the filing of the opinion in this case doubt has been expressed by counsel regarding the proper method of computing the inheritance tax under the act of 1905. Counsel for the respondent insists that appellant is bound to pay a tax computed upon the amount of the gift of stock plus the money left to Mr. Charles N. Felton, Jr., by his father. But this method would be improper. A tax has been levied under the act of 1913 upon the money received by way of inheritance and no appeal has been taken from that part of the judgment approving said tax and, moreover, it has been paid. Upon the appeal, that part of the judgment which declared the gift of stock subject to the inheritance tax has been upheld except that we have decided that the said gift is properly taxable under the act of 1905. It follows that in computing the amount of tax on said stock the other parts of the inheritance of Mr. Felton which have

been taxed may not be considered, but the gift must be treated as a separate entity.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.