[Civ. No. 111. Fifth Dist. Aug. 1, 1962.]

Estate of FRANK HENRY BERNARD, Deceased. ROBERT JACKLING, Petitioner and Appellant, v. GLADYS BERNARD et al., Contestants and Respondents.

Arthur E. Boyd, Jr., for Petitioner and Appellant.

William C. Coffill for Contestants and Respondents.

CONLEY, P. J.—The proponent, Robert Jackling, appeals from an order denying his petition for probate of an alleged lost or destroyed will. At the outset it is important to note that the appeal was taken on the judgment roll and certain papers lodged in the office of the county clerk pursuant to rule 5(a)* of the California Rules of Court. There was no request for a reporter's transcript, and there is no agreed statement of facts (Cal. Rules of Court, rule 6†), or settled statement of facts (Cal. Rules of Court, rule 7‡). The court's opinion, which contains a lengthy purported summary of the evidence, is made a part of the clerk's transcript by request of the appellant.

Frank Henry ("Hank") Bernard died on October 7, 1957, as the result of a heart attack which occurred in the Bank of America at Sonora, California. For several years before his death "Hank" had resided in a cabin on his real property near historic Jackass Hill in Tuolumne County.

The decedent left surviving him two brothers and a sister and two nephews and a niece, the children of a predeceased sister. Shortly after the decedent's death his brother, Paul S. Bernard, one of the respondents herein, was appointed administrator.

The appellant, Robert Jackling, was an old friend of the decedent; he had been permitted to live in a cabin on the real property owned by "Hank" Bernard. Mr. Jackling filed a creditor's claim against the estate on April 1, 1958, for a total of $3,147.51 for alleged services rendered to the decedent, including an item headed "Personal services at request of

*Formerly Rules on Appeal, rule 5(a).
†Formerly Rules on Appeal, rule 6.
‡Formerly Rules on Appeal, rule 7.

deceased—$2400.'' This claim was rejected by the administrator. One George Condra, later one of the witnesses for the proponent of the alleged lost will, also filed a creditor's claim against the estate in the sum of $784, and this claim was also rejected; no suit was filed by Condra on the claim. Mr. Jackling did file a suit on his rejected claim, but the case was ultimately dismissed on his own motion.

Later, an order was made by the trial court on application of Mr. Jackling, directing Paul S. Bernard to appear before the court on November 21, 1958, to produce an alleged will which had not been presented for probate; a hearing was had on Jackling's petition, and in due course the petition was denied. On June 6, 1960, another petition for an order requiring the production of a will was filed on application of Jackling, and Gladys Bernard was brought into court; after a full hearing the court determined that she did not have any such will in her possession.

Thereafter, on July 28, 1960, Mr. Jackling filed the petition here in question for the probate of a ''lost or destroyed will'' pursuant to the provisions of section 351 of the Probate Code. It alleges that the will was holographic, that it was made in 1955, and was never revoked but was in existence at the time of the decedent's death and was either lost or destroyed immediately after his death. The alleged will was said to be approximately as follows:

WILL OF FRANK HENRY BERNARD

DATED.............1955

I bequeath all the property situate on Jackass Hill to Robert Jackling. The rest of my property I bequeath one-fourth to Robert Jackling and three-fourths to Gladys Bernard.

FRANK HENRY BERNARD

Answers in opposition to the probate of the alleged lost or destroyed will were filed by the heirs of the decedent, by the administrator of the estate and by the executor of the will of John Walter Bernard, deceased, who had died since the death of ''Hank'' Bernard. The case came on for hearing before the trial judge sitting without a jury. Evidence was introduced on behalf of the parties, and thereafter the court filed an extensive memorandum opinion (which occupies some 28 pages in the clerk's transcript), findings of fact and conclusions of law and an order denying the petition for probate

of the alleged will. The findings of fact specifically state that after the death of Frank Henry Bernard: ". . . due and diligent search of decedent's effects and of his premises failed to disclose the existence of any will whatsoever of decedent, and that said decedent died intestate."

The court finds that the allegations contained in paragraphs II, III, IV, VI and VIII of the petition for probate of the lost or destroyed will are untrue. Paragraph II of the petition, which is thus positively denied in the findings, reads as follows:

"That said deceased left a last will wholly written, dated and signed all in his own handwriting, which will was dated in 1955 and which has never been revoked and was in existence at the time of the testator's death and was either destroyed or lost immediately thereafter."

The remaining paragraphs of the petition which are expressly denied in the findings deal with the alleged contents of the alleged lost will or the beneficiaries allegedly named therein. The meaning of the court in holding that paragraph II of the petition for probate is untrue is made clear in the memorandum opinion of the court in the clerk's transcript, which may properly be referred to for this limited purpose. The court concluded that the decedent had at one time made a holographic will substantially in the form alleged in the petition for probate, but that there was no evidence that such will was in existence at the death of the decedent. In the memorandum opinion the court says:

"The real question from the legal standpoint is whether or not such a will was in existence at the time of the death of the testator, or if destroyed if it had been destroyed by public calamity or fraudulently in the lifetime of the testator without his knowledge. This is no indication that the will was destroyed by public calamity nor fraudulently in his lifetime without his knowledge and no evidence whatsoever to this effect and it must therefor[e] be presumed that if the will were destroyed during his lifetime that it was destroyed by the testator himself.

"In order to sustain petitioner's position in this case the Court would have to make a finding from the evidence that the will was in existence and unrevoked at the death of the decedent and that due search and inquiry after death failed to produce the will which would indicate that it was lost or destroyed sometime after the death of the decedent. This Court cannot make such a finding because the Court does not

accept as true the testimony of the witness Condra that he saw any such will on October 7th, 1957. To the contrary the Court does find that a due and diligent search of the premises immediately following the death of the decedent failed to disclose the existence of any will whatsoever.''

The trial judge later says in his memorandum: ''It is therefor[e] the opinion, conclusion and decision of the Court that the petitioner has failed by a preponderance of the evidence to sustain the existence of the holographic will at the time of the death of the decedent and the petition is therefor[e] denied.''

The decision of the court amounted to a holding that the requisites of proof in section 350 of the Probate Code had not been complied with. That section reads as follows:

''No will shall be proven as a lost or destroyed will unless proved to have been in existence at the time of the death of the testator, or shown to have been destroyed by public calamity, or destroyed fraudulently in the lifetime of the testator, without his knowledge; nor unless its provisions are clearly and distinctly proved by at least two credible witnesses.''

The briefs of appellant's counsel suffer the fatal handicap of having no record to support them. These briefs would constitute an excellent argument before decision by a trial judge, but are necessarily ineffective before this court, because there is no reporter's transcript or agreed or settled statement of facts which can be utilized by appellant for the purpose of attacking the findings or judgment. Volume 3, California Jurisprudence 2d, Appeal and Error, section 248, page 759, states the well-known rules governing appeals as follows:

''The appellate court can look only to the record to ascertain the lower court's action. Hence facts not properly presented in the record will not be considered on appeal, and cannot be qualified for consideration by presentation in the briefs of counsel. Thus, a party who has failed to avail himself of the privilege of incorporating into the record matters on which he relies as grounds for relief cannot base any effective argument on appeal upon such matters.''

Counsel for appellant attempts to substitute a statement of facts in the trial court's memorandum opinion for the missing evidentiary record. But this cannot be done.

In *Cohen* v. *Metropolitan Life Ins. Co.*, 32 Cal.App.2d 337, 342 [89 P.2d 732], it is said:

"The written opinion of the trial court is no part of the record on appeal and will not be considered by this court for the purpose of predicating error in the rulings of the trial court or in determining whether the findings of fact are supported by the evidence. [Citations.] ▮ The question for determination by the appellate court is whether the decision of the trial judge was correct and we are not concerned with the accuracy of his judicial reasoning or argument."

The same rule is emphasized in *In re Lasker*, 51 Cal.App.2d 120, 121-122 [124 P.2d 72]: "Although an opinion of the trial judge is sometimes found useful as illustrating the theory or basis of the decision (*Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 750 [47 P.2d 273]), it cannot, even when incorporated in the transcript, be accepted as establishing any fact in the case. (*Goldner* v. *Spencer* (1912) 163 Cal. 317, 320 [125 P. 347]; *Estate of Felton* (1917) 176 Cal. 663, 667 [169 P. 392].) . . . Since it is the duty of appellate courts to decide cases upon the records before them, there is no justification for the adoption of loose practices which would make for uncertainty or inadequacy in records on appeal."

▮ In *Buckhantz* v. *R. G. Hamilton & Co.*, 71 Cal. App.2d 777, 780-781 [163 P.2d 756], the court said: "Appellant complains that a written memorandum or opinion filed by the trial judge, indicating his conclusions upon certain of the facts, is in conflict with the findings of fact subsequently signed and filed. We have made no comparison of the opinion and the findings for the purpose of ascertaining whether appellant's claim is well grounded for the reason that if there be such conflict the result of the appeal would not be affected.

"The writing of opinions by trial judges is not to be discouraged, whether the questions determined be purely of law or of mixed law and fact. Such course is sanctioned by the Canons of Judicial Ethics of the American Bar Association and is desirable for the purpose of showing that the judge has a full understanding of the case and of indicating to the litigants and their counsel his reason for believing the evidence given by some of the witnesses and disbelieving that given by others.

"An opinion of the judge of the trial court, although not a part of the record, is of value to the reviewing court as an aid in illustrating the theory of the decision and in discovering the process by which the judgment has been reached. (*Coakley* v. *Ajuria*, 209 Cal. 745, 749 [290 P. 33]; *Estate of*

*Felton,* 176 Cal. 663, 667 [169 P. 392].) But a trial judge's oral remarks or written opinion cannot be considered in determining whether or not the findings are sufficiently supported by the evidence (*Goldner* v. *Spencer,* 163 Cal. 317, 320 [125 P. 347] ; *Estate of Felton, supra*), and cannot be used to impeach the findings. (*Messenkop* v. *Duffield,* 128 Cal.App. 541, 543 [18 P.2d 67].) Neither an oral expression nor a written opinion can restrict the power of the judge to declare his final conclusion in his findings of fact and conclusions of law. (*Scholle* v. *Finnell,* 173 Cal. 372, 376 [159 P. 1179].) The findings and conclusions constitute the final decision of the court and an oral or written opinion cannot be resorted to for the purpose of impeaching or gainsaying the findings and judgment. (*DeCou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444].) The findings of fact constitute the actual decision of the court (Code Civ. Proc., § 632) and we are concerned with the correctness of the decision and judgment rather than with the reasons, as expressed in the opinion, which motivated the trial court in reaching its conclusions. [Citing authorities.]''

In *DeCou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444], cited in the above opinion the court said: ''The law is definitely settled in this state by a long line of decisions that the opinion of the trial court is not a part of the record and cannot be considered by an appellate court as indicating what operated upon its mind in coming to a conclusion as to the ultimate facts in the case. It has been directly held that the opinion, though printed in the transcript, is no part of the record on appeal and cannot be considered by the court in any manner or for any purpose.''

In *Redsted* v. *Weiss,* 73 Cal.App.2d 889, 891-892 [167 P.2d 735], it is pointed out that the new rule permitting the inclusion in the clerk's transcript of the judge's memorandum opinion (Cal. Rules of Court, rule 5(a)*) does not authorize its use as a substitute for the evidentiary record:

''Appellant's argument that the change in the Rules on Appeal (subd. a, rule 5) which make the written opinion of the trial judge a part of the record on appeal, alters the rule of the earlier cases is answered in *Southern Cal. etc. Lines* v. *San Diego etc. Ry. Co.,* 66 Cal.App.2d 672, 676 [152 P.2d 470], where the court said: 'We do not believe that it was the intention of the rule makers to change the long established rule that the written opinion of the trial judge may

---

*Formerly Rules on Appeal, rule 5(a).

not be used to impeach his solemn findings and judgment. Such opinions are often an aid to an appellate court in order to disclose the process of reasoning of the trial judge in reaching his ultimate decision. The new rules make such opinions available to appellate courts and this is as far as they go. There is nothing in the rules evidencing a contrary intention. (See 17 So.Cal.L.Rev. 107.)' '' (See also *Wincar Welders* v. *Leebrick,* 186 Cal.App.2d 195, 199 [8 Cal.Rptr. 846] ; *Sketchley* v. *Lipkin,* 99 Cal.App.2d 849, 855 [222 P.2d 927].)

■ ''The rules of evidence, the weight to be accorded to the evidence, and the province of a reviewing court, are the same in a will contest as in any other civil case.'' (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] ; see also *Estate of Snowball,* 157 Cal. 301, 305 [107 P. 598] ; *Estate of Barr,* 69 Cal.App. 16, 33 [230 P. 181].)

■ This being so, and no usable record of the evidence being before the court, the general rule stated in 3 California Jurisprudence 2d, Appeal and Error, section 267, page 798, applies: ''As a general rule, evidence which was introduced in the trial court will not be considered on appeal unless it is incorporated in the record. Thus, where an appeal is taken on a record consisting of a judgment roll or clerk's transcript alone, the consideration of the court is confined, since the evidence is not before it, to a determination of whether the complaint states a cause of action; whether the findings are within the issues; whether the judgment is supported by the findings; and whether reversible error appears on the face of the record. If the evidence is not set forth in the record, the appellate court will not consider an objection that the lower court failed to make a finding on a material issue. . . .''

■ In 3 California Jurisprudence 2d, Appeal and Error, section 271, page 810, it is said: ''A reviewing court will not consider the sufficiency of the evidence unless all the evidence pertaining to the matter complained of is included in the record on appeal. It follows that the sufficiency of the evidence cannot be reviewed where the record omits the evidence altogether, as where the appeal is on the judgment roll alone.''

As stated in the memorandum opinion, the trial court believed that Mr. Bernard had at one time drawn up a holographic will but that it had been destroyed by him with intent to revoke it during his lifetime. The appellant maintains that the findings are defective because they do not make specific mention of the fact that there was at one time a

writing that would have constituted his will if it had been in existence at the time of his death. The court, however, followed the allegations of the petition, which were not divided into two separate factors, but stated that the decedent left a will of such and such a kind. In negativing this allegation the court necessarily found that no such will was left. If the writing was destroyed by Mr. Bernard with the intent to revoke it during his lifetime and it did not exist at the time of his death, it was, of course, no will. In considering this finding, the following principles are helpful.

■■■■ "[I]t must be borne in mind that there is a definite presumption which is applicable to a situation of the character which is here presented. This presumption is stated in *Estate of Sweetman,* 185 Cal. 27, 28 [195 P. 918], as follows: 'A will last seen and known to have been in the possession of the decedent, which cannot be found after his death, will be presumed to have been detroyed by him and with an intention of revoking it, since the law always presumes in favor of the innocence of an act, and any other inference would involve a finding of a wrongful or fraudulent destruction of the will by a third person.'" (*Estate of LeSure,* 21 Cal. App.2d 73, 80 [68 P.2d 313].)

"It was established beyond question that the will was last seen and known to have been in the possession of the deceased on April 19, 1923; that from that date until the day of her death she was in the possession of her physical and mental faculties and that the will could not be found after her death. From these facts the presumption arises that the will was destroyed by the testatrix with the intention of revoking the same. [Citing authorities.]" (*Estate of Ross,* 199 Cal. 641, 646 [250 P. 676].)

■■■■ "Where the evidence shows that a missing will was in the possession of the testator and that he was active physically and mentally, a presumption arises that he has destroyed it with the intention of revoking it, and the presumption of the continued existence of a given condition declared in subdivision 32 of section 1963, Code of Civil Procedure, with proof of the existence of the will at some time prior to death is not sufficient to overcome the presumption of revocation. [Citing authority.]" (*Estate of Moramarco,* 86 Cal.App.2d 326, 334 [194 P.2d 740].) (See 53 Cal.Jur.2d, Wills, §§ 495, 496, pp. 784-787.) (See also *Estate of Rodda,* 152 Cal.App.2d 300, 303 [313 P.2d 582].)

It should be remembered that here we have an appeal on

the judgment roll with various documents added pursuant to the rule 5(a) of the California Rules of Court* but with no record of the evidence. The following authorities would therefore be applicable:

"On an appeal on the judgment roll alone, where a finding is made on the subject matter, it will be presumed that there was received into the record, evidence sufficient to support it. [Citing authorities.]" (*Ferl* v. *Ferl,* 135 Cal.App.2d 458, 462-463 [287 P.2d 514].)

 "If the evidence is not set forth in the record an appellate court will not consider an objection that the court below failed to make a finding upon a material issue, . . ." (*Oppenheimer* v. *Union Pacific R.R. Co.,* 142 Cal.App.2d 8, 11 [297 P.2d 700] ; *White* v. *Jones,* 136 Cal.App.2d 567, 569 [288 P.2d 913] ; see also rule 52, Rules on Appeal,† and Witkin's discussion thereof (3 Witkin, California Procedure, Appeal, § 81, p. 2241).)

 "'[H]owever lame, however inconclusive, any number of the findings may be, if in any case there be one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded.' (*American National Bank* v. *Donnellan* (1915) 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744].)" (*Brewer* v. *Simpson,* 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289].)

The order denying the petition for the probate of the alleged lost or destroyed will is affirmed.

Brown, J., and Stone, J., concurred.

---

*Formerly Rules on Appeal, rule 5(a).
†Now California Rules of Court, rule 52.